TOMPKINS et al. v. HOOKER et al.
(No. 1739.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 29, 1917.)

1. EVIDENCE ⬅271(16)—HEARSAY—DECLARATIONS OF DECEDENTS—FAMILY HISTORY.
The rule admitting the declarations of deceased persons to prove family history and pedigree will not be extended to include declarations made in the declarant's interest.

2. JUDGMENT ⬅725(1) — RES JUDICATA — QUESTIONS CONCLUDED.
Whenever a question of fact is of such a character that it requires evidence to sustain it, and on that evidence a determination has been reached and declared, the fact adjudicated is one which the parties and their privies will not be permitted to reopen in a second controversy among themselves.

3. JUDGMENT ⬅956(1)—RES JUDICATA—BURDEN TO SHOW PARTICULAR QUESTION HAS BEEN DETERMINED.
When the subject-matter of the two suits is not the same, it devolves upon those invoking an estoppel by prior adjudication to show either by the record or extraneous evidence that the particular question before the court has been previously determined.

4. JUDGMENT ⬅956(1) — PRESUMPTIONS IN FAVOR OF.
In a second partition suit, the court must assume that the court, in a prior partition suit involving the same parties and their privies, wherein a husband claimed an interest by inheritance from his wife, who died without issue, heard the necessary evidence as to who were the wife's lawful heirs, and on such evidence based the portion of the decree relating to the husband's interest.

5. JUDGMENT ⬅956(5) — RES JUDICATA — IDENTITY OF ISSUES.
Where a second partition suit involves property different from that involved in a first,

though involving the same parties or their privies, in order for the judgment in the first to be conclusive as to whether a party's wife left children, it must appear that the particular issue was decided in the first suit.

**6. PARTITION ☞55(2)—PLEADING TITLES.**

Joint owners in a partition suit were not required specifically to plead their respective titles.

**7. JUDGMENT ☞540 — RES JUDICATA—FRIENDLY LITIGATION.**

The fact that a decree claimed to conclude an issue in subsequent litigation was rendered in friendly litigation, where no real contest took place, is without importance; the conclusiveness of the adjudication depending on the source from which it came, and the issue it determined, not upon the violence of the controversy.

**8. APPEAL AND ERROR ☞1051(1)—HARMLESS ERROR—EVIDENCE.**

The judgment and record in a prior partition suit being conclusive on the issue as to whether or not a wife died without issue, error in permitting the introduction of improper testimony tending to show such fact was harmless.

**9. DESCENT AND DISTRIBUTION ☞6—RIGHTS OF HEIRS—LAWS GOVERNING.**

The rights of the heirs of a deceased wife were fixed by the laws in force at the time of her death.

**10. DESCENT AND DISTRIBUTION ☞6—VESTED PROPERTY RIGHTS—RIGHTS OF HEIRS.**

The rights of a deceased wife's heirs which accrued upon her death were vested property rights which could not thereafter be disturbed, either by statutory or by constitutional restrictions.

**11. APPEAL AND ERROR ☞207—PRESERVING GROUND OF REVIEW — READING OF INAPPLICABLE STATUTE.**

In a partition suit, defendants setting up adverse possession in their predecessor, the action of the court in permitting to be read over objection an article of a statute which had no application to the case, thus in effect authorizing the jury to exclude from the period of adverse possession the time defendants' predecessor occupied the premises as a homestead, is available error, though defendants' attorney failed to request a written instruction directing the jury to disregard the action of opposing counsel, and the law read in their hearing.

**12. PARTITION ☞83 — PROPERTY OWNED BY TENANTS IN COMMON—DEED OF COTENANT TO THIRD PERSON—DIVISION OF LAND.**

The deed of one cotenant conveying to a third person a specific portion of the common property is void as to the other cotenants, but, to preserve property rights, in partition proceedings courts of equity usually will set aside to the purchaser the portion described in his deed if possible without injury to the remaining cotenants, and the division will be made according to value exclusive of the purchaser's improvements, a rule applicable in cases where all of the common property is before the court for partition.

**13. PARTITION ☞83—CONVEYANCE OF PART OF LAND BY COTENANT—CONSIDERATION FOR PURPOSE OF ASCERTAINING VALUE.**

Where the portion of land previously conveyed to a third person by a cotenant was omitted from a partition suit between the cotenants because of adverse titles acquired by limitation, though the court may not exercise any power of partition over the lands sold by the cotenant, it may consider the portion to ascertain its value, and be governed thereby in adjusting the equities of the parties; if there was no voluntary partition as to the portion of the land conveyed, the valuation should be

ascertained at the date of the trial, when final division is to be made, and, if it is proper to charge the cotenants' vendees with such portion of the common property, they should be made to account for it at the value it had when the rights of the cotenants were to be adjusted.

**14. PARTITION ☞86—LIABILITY FOR RENT.**

In partition between cotenants, plaintiffs were entitled only to their proportion of the rents after they were legally ousted from possession.

Appeal from District Court, Red River County; Ben H. Denton, Judge.

Suit by F. A. Hooker and others against T. T. Tompkins and others. From a judgment for plaintiffs, defendants appeal. Judgment reversed, and case remanded.

Lennox & Lennox, of Clarksville, for appellants. Kennedy & Robbins, of Clarksville, and V. H. Biddison and J. Q. Mahaffey, both of Texarkana, for appellees.

HODGES, J. The appellees as plaintiffs below brought this suit to recover an undivided interest in the tract of land described and for a partition. The material facts, briefly stated, are as follows: In 1867 David Fulbright conveyed as a gift to his daughter, Christina Lawson, 301 acres of land of the Gooch survey situated in Red River county, a part of which is involved in this suit. Christina Lawson and her husband, Pleasant Lawson, moved onto this tract of land and occupied it as their homestead till her death in 1870. She died intestate, but whether or not she left a child surviving is one of the important issues involved in this litigation. Soon after this conveyance to his daughter, David Fulbright died leaving considerable real estate and a number of children and their descendants. His son P. Fulbright was appointed administrator of his estate. In 1875, some years after the death of Mrs. Lawson, the descendants and heirs of David Fulbright sought a judicial partition of his real estate. A petition was filed in which the children and heirs of David Fulbright were named as plaintiffs, and P. Fulbright, the administrator, as defendant. Among those enumerated as petitioners appeared the name of P. Lawson. After naming other children of David Fulbright, the petition mentions Christina Lawson, "who," it alleges, "died intestate in 1870, leaving a husband, petitioner Pleasant Lawson, but no descendants." The petition was signed by attorneys and shows that service was waived by P. Fulbright. A judgment of partition was thereafter rendered specifying the interest each claimant was entitled to have and appointing commissioners to make the division. Among other recitals, the partition decree contains the following:

"And to Pleasant D. Lawson as heir of his deceased wife Christina Lawson one twenty-second ($1/22$) part of said land."

The evidence showed that David Fulbright had eleven children, and that the part award-

ed to Lawson was only half of a child's portion. Lawson afterwards married a second wife, and they continued to reside upon the tract of land conveyed to his first wife; his residence, however, was shifted to different places on the land to suit his convenience. Some time after the death of his first wife, Lawson began to sell off specific portions of the land, in each instance executing a deed as the owner in fee simple of the entire interest conveyed. After the death of his second wife, Lawson continued his residence on the land till his death, which occurred in the latter part of 1911. A few months prior to his death he conveyed 175 acres, being all that remained of the original conveyance to Mrs. Lawson, to T. T. Tompkins and Fletcher Tompkins, and it is under this deed the appellants now claim title.

The appellees are the surviving brothers and sisters of Mrs. Lawson, and the descendants of those deceased. They contend in this suit that Mrs. Lawson died intestate and without issue, and that they are entitled by inheritance to one-half of the separate real estate she owned at the time of her death. They claim that those who hold under Lawson should in a partition be charged with that portion of the 301 acres of land he had previously conveyed, and that the deed to the appellants was valid as a conveyance of only the excess then remaining of the one-half interest in the original tract.

The appellants defend upon two grounds: First, they say that Christina Lawson was survived by a child who died in infancy, and that Pleasant Lawson took all of the land by inheritance from his deceased child and therefore had a right to convey. As a second defense, they urge that Lawson acquired a title by adverse possession extending over a period of more than ten years prior to the institution of this suit.

In response to questions propounded by the court, the jury found that Mrs. Lawson died without issue, and that there had been no adverse possession by Lawson and those claiming under him sufficient to create a title by limitation.

[1] There was a sharp conflict in the evidence regarding the birth of a child before the death of Mrs. Lawson. Over the objection of the appellants, the court permitted the appellees to prove by certain witnesses declarations made by deceased sisters and brothers of Mrs. Lawson that she had died without leaving a child. This testimony was objected to upon the grounds that it was hearsay and that the declarations were self-serving. It is now well settled that the rule which admits the declarations of deceased persons to prove family history and pedigree has its limitations. Byers v. Wallace, 87 Tex. 507, 28 S. W. 1056, 29 S. W. 760. The doctrine will not be extended so as to include declarations made in the interest of the declarant. The court, we think, erred in permitting the introduction of such testimony, and for that error the judgment should be reversed unless it may be treated as harmless.

As proof that Mrs. Lawson died without issue, the appellees offered in evidence the petition and judgment in the partition proceedings instituted by the Fulbright heirs in 1875. They now contend that the record in that case settled that question, and that Lawson and those who claim under him were thereafter estopped to raise that issue in any proceeding between the same parties or their privies. Appellees admit that the land here involved was no part of what was then before the court, but insist that, the parties being legally the same as those involved in this case, the judgment then rendered was conclusive and that issue cannot be again reopened.

[2, 3] It will be observed that this is not an instance in which a former judgment is insisted upon as a bar to the suit because of the identity of the subject-matter, but one in which the issue and the parties are legally identical. It is sometimes difficult to determine when the particular issue settled in a judicial proceeding is of sufficient dignity to be covered by the rule of estoppel. Whenever the question of fact is of such a character that it requires evidence to sustain it, and upon that evidence a determination has been reached and declared, the fact adjudicated is one which the parties and their privies will not be permitted to reopen in a second controversy among themselves. Cromwell v. Sac County, 94 U. S. 351, 24 L. Ed. 197; Hanna v. Read, 102 Ill. 596, 40 Am. Rep. 608; 2 Black on Judgments, § 609; 15 Ruling Case Law, pp. 973–976, and numerous cases cited in notes. Where the subject-matter of the suit, however, is not the same, it devolves upon those invoking the estoppel to show either by the record of extraneous evidence that the particular question then before the court has been previously determined.

In the partition proceedings above referred to it was necessary for the court before rendering a decree dividing the estate to ascertain the full extent of the interest of each joint owner.

[4-8] The petition alleged, in substance, that Lawson owned an interest by inheritance from his wife, and, as measuring the extent of that interest, stated that Mrs. Lawson died without issue. This, if true, would entitle him to one-half of a child's portion. The partition decree shows that he was awarded that interest. We must therefore assume that the court in that proceeding heard the necessary evidence as to who were the lawful heirs of Mrs. Lawson, and upon that evidence based that portion of his decree relating to Lawson's interest. That decree involves a finding that Lawson was an heir and also that Mrs. Lawson's brothers

and sisters were joint heirs with him. This finding could not have been made except upon proof that Mrs. Lawson died without issue; for if she had been survived by a child the latter would have inherited her entire estate, and upon the death of the child this would have passed to Lawson, the father. If, therefore, we take the pleadings as the basis of the partition decree, the judgment can be sustained only by a finding that Mrs. Lawson left no surviving child. We do not overlook the fact that, this being a suit involving different property, it must appear that this particular issue was decided in that suit. While the joint owners in that litigation were not required to specifically plead their respective titles, they elected to do so. In the absence of evidence to the contrary, we must presume that they followed the usual legal rule and proved the essential facts which they alleged. If that be true, then the very question here put in issue was then tried and decided. The fact that the particular decree was rendered in a friendly litigation where no real contest took place is of no importance. The conclusiveness of the adjudication depends upon the source from which it came and the issue it determined, and not upon the violence of the controversy. If the parties by their agreements and confession dispensed with the necessity for offering an array of evidence, the issue to be determined was not for that reason robbed of its importance or altered in its nature. Richardson v. Trout, 135 S. W. 677; Last Chance Mining Co. v. Tyler Mining Co., 157 U. S. 687, 15 Sup. Ct. 733, 39 L. Ed. 859. The judgment and record in the partition proceedings being conclusive upon the issue as to whether or not Mrs. Lawson died without issue, there was no reversible error in permitting the introduction of the improper testimony previously referred to.

It is also insisted by the appellants that the evidence conclusively established a title in them by adverse possession of ten years, and that the court should not have submitted that issue to the jury. While there was much testimony tending to show an adverse possession by Lawson, there was enough evidence to the contrary to require a submission of that question to the jury.

There was no error in the rulings made in admitting the testimony objected to upon the issue of limitation.

Complaint is made of the action of the court in making certain remarks in the presence and hearing of the jury. The bill of exception reserved thus presents the question:

"Be it remembered that on the trial hereof, it being contended by the plaintiffs that as the homestead of P. Lawson and Christina Lawson was on the 301-acre tract in controversy at the date of the latter's death in May, 1870, it was not subject to partition, and that limitation did not commence to run against her heirs so long as Lawson's homestead right existed, and the defendants contended that it was subject to partition under the existing laws at the time and that his holding was presumed to be adverse after four years, and the court having already submitted the issue of limitation to the jury with appropriate instructions in connection therewith, and the defendants' counsel having closed their argument, the plaintiffs' counsel in his closing argument offered to read to the jury article 3429 of Vernon's Statute as proof and in substantiation of their contention, to which the defendants then and there objected on the ground that it was not the law at the time Christina Lawson died and that the court had already instructed the jury on the issue. The court overruled the objection and permitted the attorney to read the article of the statute in question, and in connection therewith remarked that he had instructed the jury on the question of limitation in the charge so given, but saw no objection to counsel reading the statute in question as it was the law on the subject."

[9-11] The article above referred to provides that on the death of the wife leaving a husband the homestead shall descend and vest as other real property, but that it shall not be partitioned among the heirs of the deceased during the lifetime of such surviving husband, or so long as he may elect to use or occupy the same as a homestead. The rights of the heirs of Mrs. Lawson were fixed by the laws in force at the time of her death. Lindsay v. Freeman, 83 Tex. 259, 18 S. W. 727. The record shows that Mrs. Lawson died in May, 1870, before the general revision of the probate laws enacted that year took effect. 3 Sayles' Early Laws, art. 3484 et seq. Any limitation upon the rights of the heirs to then partition the homestead must be found in the General Act of 1848 with its amendments. The only provisions of that law which can be relied on as w'thdrawing the homestead from assets subject to partition appears in section 45 of Acts 2d Leg., c. 157; P. D., art. 1305. This section provides for setting aside to the widow and minor children of the deceased the exempt property, and protects this from distribution only when the estate is insolvent. No such provision is extended to a surviving husband without children. Hence there does not appear to have been any legal obstacle to the partition of the land in controversy at the time Mrs. Lawson died. Jergens v. Schiele, 61 Tex. 257; Putnam v. Young, 57 Tex. 464. The rights of the heirs which then accrued were vested property rights which could not thereafter be disturbed by either statutory or constitutional restrictions. Wright v. Straub, 64 Tex. 64. The article of the statute read to the jury by counsel for appellees had no application whatever. The action of the court in permitting it to be read over objection was tantamount to a ruling that it did apply and that it should be considered by the jury as a part of the law of the case in passing upon the issue of adverse possession. This in effect authorized the jury to exclude from the period of adverse possession the time Lawson occupied the premises as a homestead. If this were done there was little, if any, evidence remaining upon which to base a finding for the appellants upon that

issue. Unless the jury wholly disregarded the article read, and its express approval by the court, appellants were materially injured by the conduct complained of. The objection is not rendered unavailable because of the failure of the appellants' attorney to request a written instruction directing the jury to disregard the action of appellees' attorney and the law read in their hearing. It is not probable that the court would have excluded in writing what he had expressly approved orally. The authorities relied upon by the appellees to sustain their contention are not applicable. This error we regard as of such importance as to require a reversal of the judgment.

[12, 13] In the decree dividing the land between the plaintiffs and defendants in the court below its value was disregarded, 150½ acres were awarded to the appellee, and the remainder to the appellants. Presumably in making that division the court charged the appellants with the number of acres which Lawson had previously conveyed out of the original tract and limited the interest which he had a right to convey to the appellants to what remained in acreage of his undivided half. The evidence tended to show that the 176 acres in controversy were much more valuable than that which had been previously disposed of, and it is insisted by the appellants that this difference in value should have been taken into consideration by the court in measuring the interest or number of acres which the appellees were entitled to recover, since to that extent there was to be a partition of the land. It is well settled that the deed of one cotenant conveying to a third party a specific portion of the common property is void as to the other cotenants; but in order to preserve property rights in partition proceedings, courts of equity will usually set aside to a purchaser the portion described in his deed, provided this can be done without injury to the rights of the remaining cotenants. Broom et al. v. Pearson et al, 200 S. W. 191, recently decided by this court, and cases there cited. And in such cases the division will be made according to the value, exclusive of the improvements put upon the land by such purchaser. That rule, however, is generally applied in those cases where all of the common property is before the court for partition. In this case there is involved a part only of the Christina Lawson estate, which the claimants once owned in common. It appears from the briefs and argument that the portion previously conveyed was omitted from this suit because of adverse titles acquired by limitation. The question is: Does that situation alter the rule? Assuming that there has been no voluntary partition previously made as to that portion of the land which Lawson had conveyed, we are of the opinion that the valuation taken should be ascertained at the date of the trial, the time when the final division is to be made. If in the adjustment of the equities between the parties to the suit it is proper to charge the vendees of Lawson with that portion of the common property which he had wrongfully disposed of, they should be made to account for it at the value it had when the rights of the cotenants were to be adjusted. In the application of that rule the appellees will lose nothing by reason of the wrongful conduct of Lawson, their cotenant, in placing a portion of the land beyond their reach. While the court may not exercise any power of partition over what had been sold by Lawson, it may consider that portion for the purpose of ascertaining its value, and be governed thereby in adjusting the equities of the parties in what remains. We are therefore of the opinion that the court erred in not taking into consideration the present value of all the land which formed the Christina Lawson estate described in the deed from her father.

[14] In remanding the case we take occasion to call attention to an error in rendering a judgment against the appellants for all of the rents that had accrued upon the property. The appellees are only entitled to their proportion after they were legally ousted from the possession.

The judgment of the court will be reversed, and the case remanded.