## TEXAS & N. O. RY. CO. et al. v. THOMPSON. (No. 1149—5108.)

Commission of Appeals of Texas, Section A.
Jan. 23, 1929.

Baker, Botts, Parker & Garwood and Garrison & Watson, all of Houston, for plaintiffs in error.

Ewing Werlein, of Houston, for defendant in error.

CRITZ, J. This suit was instituted in the district court of Harris county, Tex., by Tommie L. Thompson, defendant in error, who will hereafter be designated plaintiff, against Texas & New Orleans Railway Company and Galveston, Houston & San Antonio Railway Company, plaintiffs in error, who will hereafter be designated as defendants, for damages on account of personal injuries received by the plaintiff while in the employ of said defendants. It is alleged in the petition that the railroad companies were guilty of negligence in certain particulars.

The defendants answered, and, among other defenses, pleaded that the defendants had made a full, final, and complete settlement with the plaintiff for any and all claims, demands, and causes of action which had accrued or might hereafter accrue to plaintiff by reason of the injuries complained of, and that defendants had paid plaintiff the sum of $200 in cash; that plaintiff had executed his release in full, releasing the defendants from all claims, demands, and causes of action against them which had accrued or might hereafter accrue to said plaintiff, etc. Also said release recited that no promises or representations by the defendants, or any

of its agents other than that recited in the release, were made, and especially that no promise had been made by said defendants or their agents agreeing and promising any future employment to plaintiff.

The plaintiff, by supplemental petition, pleaded in substance that he ought not to be precluded from recovery by reason of the release for the reason that same was obtained by fraud, and was therefore invalid; that the claim agent of the defendants, at the time of the execution of said release, induced the plaintiff to execute the same by promising and representing to plaintiff that if he would execute said release he would get employment from the defendants as a switchman and be promptly put back to work. Plaintiff further pleaded that he believed such statements and representations were made in good faith by the agent of the defendants, with the intention of being performed and kept, and that he relied upon the same, and was therefore induced to execute said release. Plaintiff further pleaded that said representations were not made in good faith, or with the intention of being performed, but were made with the design and for the purpose of misleading the plaintiff, and inducing him to execute said release as he would not otherwise have done. It was also alleged that plaintiff promptly reported to defendants for service and was discharged. The defendants answered the allegations of said supplemental petition denying the allegations therein pleaded.

The case was submitted to a jury by trial court on special issues, and on the answers of the jury judgment was rendered in favor of plaintiff for $2,500. The case was duly appealed to the Court of Civil Appeals for the First District, which court affirmed judgment of trial court. 1 S.W.(2d) 938. The case is now before this court on writ of error granted on application of defendants.

▮The defendants, by proper assignment, contend that the case should be reversed because of the refusal of the trial court to submit to the jury the following special issue requested by them: "Did the plaintiff, Tommie L. Thompson, at the time he signed and swore to the release offered in evidence, and at the time he returned same to claim agent Davis, know of the terms and conditions of said release?"

If the answer of the jury to the issue refused could have altered or changed the result of the case, the refusal to submit the issue was certainly reversible error; but, on the other hand, if the answer could not have altered or changed the result, then the trial court was correct in refusing to submit this issue.

We are of the opinion that in so far as the jury finding is concerned, it is absolutely immaterial to any issue of this case whether plaintiff knew the terms and conditions of the release in question at the time he delivered same to the claim agent of the defendant, for the reason that, if fraud induced the execution and delivery thereof, under the settled law of this state the release was voidable and subject to be set aside for fraud. Rapid Transit Co. v. Smith, 98 Tex. 553, 86 S. W. 322; Edward Thompson Co. v. Sawyers, 111 Tex. 374, 234 S. W. 873; A. T. & S. F. Ry. Co. v. Skeen (Tex. Civ. App.) 174 S. W. 655 (writ refused). Such is the law of this state, even though the release contained the following recitations:

"To secure this settlement and the payment of said sum I hereby *represent* to said railroad that I am twenty-one years of age, and that I rely wholly upon my own judgment, belief and knowledge of the nature, extent, and duration of said injuries, disabilities and damages and that *no representations or statements* about them, made by said railroad's surgeons or agents *have influenced me* in making, *nor induced* me to make this *settlement.*

"*No promise of employment nor other agreement not herein expressed has been made by said railroad, nor by any of its officers, agents or employés.*"

▮It is the contention of the defendants that, since the release itself contains the above-quoted provisions, before plaintiff can set aside the release or contradict the terms thereof by oral evidence of fraud, the proof must show that fraud committed in the preparation of the release, or that the claim agent by some fraudulent act had prevented the plaintiff from ascertaining the true terms and conditions of said release. We cannot assent to this contention, for the reason that if the release is voidable on account of fraud in its inception, then each and every portion and clause thereto is unenforceable and without binding effect on the plaintiff.

▮It is the settled law of this state that if the agent of the companies, as an inducement to procure the execution of the release, promised the plaintiff, and induced him to believe, that if he would execute the release he would get employment from the company as a switchman, and if such promise was not made in good faith, that is to say, if said claim agent had no intention of giving him such employment, then the release was voidable and subject to be set aside for fraud. Rapid Transit Co. v. Smith, 98 Tex. 553, 86 S. W. 322, and Edward Thompson Co. v. Sawyers, 111 Tex. 374, 234 S. W. 873.

In Rapid Transit Co. v. Smith, supra, it is shown that defendant in error brought suit to recover from transit company damages for personal injuries to his wife, alleged to have been caused by negligence of the company's servants. The transit company pleaded, among other defenses, a release. The plaintiff, by supplemental petition and in reply to said allegations of transit company in

regard to said release, alleged in substance that said release was procured by fraud, in that, at the time it was executed, the agent of the company who procured the same promised that in consideration of its execution the company would give him employment as a motorman, when he knew at the time that plaintiff would not be so employed, etc. The release in question was a full and final release and settlement of the entire matter in litigation in the suit. Our Supreme Court, speaking through Chief Justice Gaines, announced the law as applied to that case as follows: "The release hereinbefore quoted is a contract definite in all its terms. It distinctly specifies the consideration for the release, and the testimony shows that it was paid. It clearly releases the defendant company from all further liability for the injuries which resulted to the wife of the plaintiff as a consequence of the accident. Being a written contract, containing the recital of the payment of one sum and the promise to pay another as a consideration, it was not subject to be varied or contradicted by parol evidence. It was not susceptible of having imported into it by parol testimony that there was an additional agreement that the company was to give the plaintiff employment as a motorman, and that upon its failure to do so the release should be void. East Line & R. R. Ry. Co. v. Garrett, 52 Tex. 133. On the other hand, if the agent of the company, as an inducement to the execution of the release, promised the plaintiff and induced him to believe that if he would execute the release he would get employment from the company as a motorman, and if such promise was not made in good faith, that is to say, if such agent had no intention of giving him such employment, then under the rule established in this court, the release was voidable and subject to be set aside for fraud. Chicago T. & M. C. Ry. Co. v. Titterington, 84 Tex. 218 [19 S. W. 472, 31 Am. St. Rep. 39]."

In Edward Thompson Co. v. Sawyers, supra, it is shown that Edward Thompson Company sued Sawyers on a written contract for the sale of 32 volumes of the American and English Encyclopedia of Law and four supplements thereto. The contract in question contained the following stipulation: "It being stipulated that no representations or guaranties had been made by the salesman on behalf of applicant which were not expressed in the written contract." Sawyers admitted signing the contract, but averred that in order to induce him to sign said contract the agent of the book company represented and agreed that said book company would continue to publish and deliver to him (Sawyers) annual supplements to said set of books for a period of not less than 15 years, or so long as Sawyers should live and continue to practice law; that said book company knew

at the time that it would not be able to issue annual supplements as represented, etc. Our Supreme Court, speaking tthrough Justice Greenwood, announced the law as applied to that case, which is also the law of the case at bar, as follows:

"(1) We think appellee's answer, fairly construed, alleges that he was deceived into executing the writing sued on, by means of a representation or promise by appellant not only not performed, but at the time made not intended to be performed. So construing the answer, it set up such fraud on the part of appellant as would entitle appellee to a rescission of the written contract with a recovery of the payments he had made, or to an award of damages for the injury he had sustained. Cearley v. May, 106 Tex. 444, 167 S. W. 725; Railway Co. v. Titterington, 84 Tex. 223, 19 S. W. 472, 31 Am. St. Rep. 39.

"(2) Promises made without intention of fulfillment, in order to induce others to make contracts, are as culpable and as harmful as are willful misrepresentations of existing facts. Hence contracts may be avoided alike for such fraudulent promises and for such misrepresentations.

"Contracts, though reduced to writing, are avoided when induced by material promises, never intended to be kept, not because one is allowed to vary his written contract, but because real assent is essential to a binding contract. Using Elliott's phrasing: 'If one is induced to go through the form of making a contract because of some fraud or misrepresentation made by the other party or his agent, relative to a material element of the agreement, such that, if he had known the truth, he would not have given his assent, the contract may be avoided by him. There can be no real assent when it is induced by fraud.' 1 Elliott on Contracts, § 70.

"(3) One who is entitled to avoid an entire written contract because it lacked his assent can no longer be held bound by any of its stipulations, including those relating to representations or guaranties which induced its execution. U. S. Gypsum Co. v. Shields (Tex. Civ. App.) 106 S. W. 726; Id., 101 Tex. 473, 108 S. W. 1165; Hackney Mfg. Co. v. Celum (Tex. Civ. App.) 189 S. W. 990, and (Tex. Com. App.) 221 S. W. 577; Threshing Mach. Co. v. Webb (Tex. Civ App.) 181 S. W. 855; Landfried v. Milam (Tex. Civ. App.) 214 S. W. 848; [Detroit Automatic] Scale Co. v. Milling Co. (Tex. Civ. App.) 217 S. W. 200."

In A. T. & S. F. Ry. Co. v. Skeen (Tex. Civ. App.) 174 S. W. 655, in which writ of error was refused by the Supreme Court of Texas, it is shown that release pleaded in that suit contained the express words: "In making this settlement no promise or representation is, or has been made relative to future employment." It is also provided: "I have read the above voucher, receipt and release and fully understand the same." In passing on

the law as applied to the release in question in the Skeen Case, where it was alleged to have been procured by fraud, the Court of Civil Appeals at El Paso, speaking through Chief Justice Harper, says: "(3) The rule in this state seems to be that if the authorized agent of the company, as an inducement to the execution of the release, promised the plaintiff, and by such promise induced him to believe, that if he would execute the release he would get employment from the company, and that if such promise was not made in good faith, then the release was voidable, and subject to be set aside for fraud. Rapid Tr. [Transit] Co. v. Smith, 98 Tex. 553, 86 S. W. 322."

It therefore follows, from the above authorities, and many others, that even though the plaintiff may have read over the release, and may have known its contents at the time he signed and delivered same to the claim agent of the defendant companies, such fact could not, in law, constitute such release a contract, binding on the plaintiff if it was procured by fraud, and therefore no error was committed by the trial court in refusing to submit this requested issue to the jury. Of course, we do not intend to say that such matters were not pertinent to go before the jury as evidence bearing on the issue of fraud as raised by the pleading of the parties.

■ By proper assignment the railroad companies contend that the trial court erred in refusing to have the jury make finding, on the issue of fraud in procuring the release in question before going into the trial of the other matters. This contention is a novel one, and we know of no authority that will sustain it. Such a proceeding would result in two trials and two verdicts in the same case. The procedure followed in this case seems to have been followed in the other case cited in this opinion and in numerous others. We overruled this assignment.

■ The railway companies by proper assignment complain of the action of the trial court in refusing to submit the following special issue to the jury: "Did the defendants, through their claim agent, Davis, fraudulently procure the execution of the release introduced in evidence?"

There was no error in the action of the trial court in refusing to submit this requested issue. In the form requested, it called for an answer to a pure legal conclusion. It is the province of the jury to find on such issues of fact raised by the pleadings and evidence as are proper and necessary to decide the fact issues of the litigation, but it is never proper to submit an issue to the jury in such a form as to call for a mere conclusion of law. The trial court, by proper questions, submitted the issue of fraud to the jury, and in response to these issues the jury found that the claim agent of defendants, in obtaining the release in question, promised the plaintiff, in substance, that he would get employment as a switchman the same as he had before the injury; that such promise was made as an inducement to plaintiff to execute the release; that the plaintiff believed that the claim agent intended such promise of employment would be carried out in good faith; that the plaintiff was induced under such belief to execute the release, in reliance on such promise being performed in good faith; and that such promise was not made with the intention of its being performed. The above findings of the jury constituted a full and complete verdict on the issue of fraud in regard to the execution of the release.

We have carefully examined the other assignments, and in our opinion the Court of Civil Appeals has correctly disposed of them.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.