THE TEXAS & PACIFIC RAILWAY COMPANY V. J. D. PRESLEY.

No. 7603. Decided June 4, 1941.
Rehearing overruled July 9, 1941.
(152 S. W., 2d Series, 1105.)

*T. D. Gresham* and *R. S. Shappard,* both of Dallas, and *King & Wheeler,* of Texarkana, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that the release signed by plaintiff, and given for a valuable consideration prior to the institution of the suit, constituted no defense to recover on an action for damages, and in not holding that said release was binding upon the plaintiff and precluded a recovery by him. It was error to hold that the defendant was not guilty of negligence in not furnishing to plaintiff a reasonable safe place to work and with proper equip-

ment to protect him for injury. Atlas Metal Works v. City of Dallas, 30 S. W. (2d) 431; Buckner v. Buckner, 51 S. W. (2d) 769; Wood v. Fulton Property Co., 92 S. W. (2d) 549.

*Lincoln & Harris,* of Texarkana, for defendant in error.

A release can be vitiated by fraud and false representations. Texas & N. O. Ry. Co. v. Tilly, 6 S. W. (2d) 86; Houston & T. C. Ry. Co. v. Brown, 69 S. W. 651.

MR. JUDGE SLATTON delivered the opinion of the Commission of Appeals, Section B.

This was an action for damages for personal injuries sustained by J. D. Presley, filed in the District Court of Bowie County against the Texas & Pacific Railway Company. A jury trial on special issues resulted in the rendition of judgment in favor of Presley for the sum of $2950.00. The Railway Company appealed. The Court of Civil Appeals reversed and rendered judgment in favor of the Railway Company, but upon motion of Presley withdrew its judgment of rendition and affirmed the judgment of the district court, with one justice dissenting. 127 S. W. (2d) 914. Writ of error was granted because of the dissent.

A careful consideration of the case on submission in this Court convinces us that the Honorable Court of Civil Appeals at Eastland has correctly decided the issues presented by this appeal. The majority opinion written by Mr. Justice Grissom on rehearing will be adopted by this Court.

Opinion adopted by the Supreme Court June 4, 1941.

Rehearing overruled July 9, 1941.

The opinion of the Court of Civil Appeals, as adopted by the Supreme Court, is as follows:

MR. JUSTICE GRISSOM.

### ON MOTION FOR REHEARING.

In March, 1937, plaintiff, J. D. Presley, while employed in the Bridge & Builders Department as a section hand for the defendant, Texas & Pacific Railway Company, fell from a house he was repairing for defendant and was injured. He had been working for the Railway Company about eight months

at the time of his injury. For several days prior to plaintiff's injury, the section crew, including plaintiff, had been repairing the inside of a section house. The night before plaintiff was injured there was a heavy rain in the vicinity of the section house which was being repaired. Water was standing around the house and the ground in that vicinity was muddy. The roof of the house was covered with metal shingles and the roof was steep. The roof was wet from the rain that had fallen the night before. Plaintiff was a carpenter who had some experience in working on roofs but had never before worked upon a metal roof. He had been employed by Pleasant Kerry, his section foreman. He was 22 years of age. He knew of other section hands who had been employed and "fired" by his section foreman. On the morning after the rain, and under the conditions mentioned, he was ordered by this foreman to get a ladder and go up on the roof and repair a brick flue located at the top of the roof. There were only two ladders at the place where the work was being done and both were too short to reach to the top of the roof. On the west side of the house there was a patch of Bermuda grass which was not covered with water. In order to repair the roof it was necessary to build a box in which mortar could be mixed and the Bermuda grass spot was selected by plaintiff as the place to set the ladder for his ascent to the roof of the house, and the place where the motar was to be mixed, for the reason that it was the only spot near the house where such work could be done without having the bottom of the ladder and the box in which the mortar was to be mixed out of the water and mud. In going to work and in obtaining and placing the ladder in position, plaintiff had necessarily gotten his shoes wet and muddy. There were no ropes and no ladder with a hook that could be placed over the top of the house and no other appliances immediatley available for the purpose of ascending to the top of the metal roof and repairing the flue as plaintiff was directed to do. There were some ropes at the section camp about two miles away. In order to get them it was necessary to push a hand car up-grade the two miles to camp. How many persons would have been required to do this is not shown by the record. The distance from the edge of the roof to the ground was slightly more than sixteen feet. The available ladders were sixteen feet long. It is evident that plaintiff believed, apparently with good reason, that he must promptly obey, without debate, his foreman's command or lose his job.

Plaintiff placed the bottom of one of the ladders on the Bermuda grass on the west side of the house, climbed the ladler and attempted to scale the metal roof. When he was about half way up the roof his feet slipped from under him, he slid off the roof and onto the ground, landing on his head and shoulders and sustained the injury complained of.

After spending sometime in a hospital and under the care of doctors he returned to work and for about thirty days did light work. Then he was discharged because he was unable to do the work of a section hand. Soon after plaintiff returned to work he was paid $50.00 by the Railway Company and executed a release of all claims for damages by reason of the injury mentioned. The release recited that he relied upon his own judgment as to the nature, extent and duration of his injuries and that no promise of employment, or other agreement not mentioned in the release had been made to plaintiff. The draft for $50.00 recited on its face that it was in full and complete settlement and payment for the injuries here sued for.

In our original opinion we reversed the judgment for plaintiff for $2,950.00 and rendered judgment for the Railway Company. In so doing we relied upon and applied to the facts of this case the principles of law announced in Texas & P. Ry. Co. v. Poe (Sup.) 115 S. W. (2d) 591; Panhandle & S. F. Ry. Co. v. O'Neal, 119 S. W. (2d) 1077; Distributors Inv. Co. v. Patton, 130 Texas 449, 110 S. W. (2d) 47, and other authorities therein cited. We are now of the opinion that our action above stated was erroneous for the following reasons: (1) Our statement in the original opinion to the effect that plaintiff did not return, or unconditionally tender, the $50.00 paid to him in settlement of his claim for damages was incorrect. It was so alleged by the trial amendment, and approved. (2) Plaintiff, (appellee here), in his motion for rehearing, states that the questions upon which we passed in reversing and rendering the judgment were not presented for our consideration by defendant (appellant here) in its assignments of error, nor briefed. This is correct. (3) Furthermore, we are now convinced that the principles of law announced in the cases above cited, and on which we formerly relied, are not applicable to the facts of this case when properly understood.

1 The principle of law applicable to the release in question under the circumstances disclosed by this record is plainly and

definitely stated in an opinion by Justice Critz in Texas & N. O. Ry. Co. v. Thompson, (Com.) 12 S. W. (2d) 963, 964, 966, as follows:

"The defendants, by proper assignment, contend that the case should be reversed because of the refusal of the trial court to submit to the jury the following special issue requested by them: 'Did the plaintiff, Tommie L. Thompson, at the time he signed and swore to the release offered in the evidence, and at the time he returned same to claim agent Davis, know of the terms and conditions of said release?'

"If the answer of the jury to the issue refused could have altered or changed the result of the case, the refusal to submit the issue was certainly reversible error; but, on the other hand, if the answer could not have altered or changed the result, then the trial court was correct in refusing to submit this issue.

"We are of the opinion that in so far as the jury finding is concerned, it is absolutely immaterial to any issue of this case whether plaintiff knew the terms and conditions of the release in question at the time he delivered the same to the claim agent of the defendant for the reason that, if fraud induced the execution and delivery thereof, under the settled law of this state the release was voidable and subject to be set aside for fraud. Rapid Transit Co. v. Smith, 98 Texas 553, 86 S. W. 322; Edward Thompson Co. v. Sawyers, 111 Texas 374, 234 S. W. 873; Atchison, T. & S. F. Ry. Co. v. Skeen (Tex. Civ. App.) 174 S. W. 655 (writ ref.). Such is the law of this state, even though the release contained the following recitations:

" 'To secure this settlement and the payment of said sum I hereby *represent* to said railroad that I am twenty-one years of age, and that I rely wholly upon my own judgment, belief and knowledge of the nature, extent, and duration of said injuries, disabilities and damages and that *no representations or statements* about them, made by said railroad's surgeons or agents *have influenced me* in making, *nor induced me* to make this *settlement*.

" 'No *promise of employment nor other agreement not herein expressed has been made by said railroad, nor by any of its officers, agents or employees.*'

"It is the contention of the defendants that, since the release itself contains the above quoted provisions, before plaintiff can set aside the release or contradict the terms thereof by oral evidence of fraud, the proof must show that fraud committed in the preparation of the release, or that the claim agent by some fraudulent act had prevented the plaintiff from ascertaining the true terms and conditions of said release. We cannot assent to this contention, for the reason that if the release is voidable on account of fraud in its inception, then each and every portion and clause thereto is unenforceable and without binding effect on the plaintiff.

"It is the settled law of this state that if the agent of the companies, as an inducement to procure the execution of the release, promised the plaintiff, and induced him to believe, that if he would execute the release he would get employment from the company as a switchman, and if such promise was not made in good faith, that is to say, if said claim agent had no intention of giving him such employment, then the release was voidable and subject to be set aside for fraud. Rapid Transit Co. v. Smith, 98 Texas 553, 86 S. W. 322, and Edward Thompson Co. v. Sawyers, 111 Texas 374, 234 S. W. 873."

\*    \*    \*    \*    \*

"It therefore follows, from the above authorities ,and many others, that even though the plaintiff. may have read over the release, and may have known its contents at the time he signed and delivered same to the claim agent of the defendant companies, such fact could not, in law, constitute such release a contract, binding on the plaintiff if it was procured by fraud, and therefore no error was committed by the trial court in refusing to submit this requested issue to the jury. Of course, we do not intend to say that such matters were not pertinent to go before the jury as evidence bearing on the issue of fraud as raised by the pleading of the parties."

Also, see King v. Wise (Com.) 282 S. W. 570.

With reference to the release it was plaintiff's contention, supported by evidence, that a physician in defendant's employ, knowing that a settlement was about to be attempted, falsely and fraudulently misrepresented to plaintiff the extent and duration of his injuries and that defendant's claim agent and section foreman promised plaintiff permanent employment with defendant, with the intention not to fulfill such promise. (The facts are stated as borne out by plaintiff and his wit-

nesses because the jury found for the plaintiff and against the defendant on all fact issues.)

2 Plaintiff contended, and there was evidence to that effect, and the jury found, in substance, that defendant was guilty of negligence because (1) the defendant's foreman ordered plaintiff to go upon the roof and repair the flue when the conditions and circumstances were such that it was extremenly dangerous and hazardous to attempt to climb the roof or repair the flue; (2) that defendant was negligent in not furnishing plaintiff with a reasonably safe place for him to perform the labor required of him; (3) that the defendant was negligent in failing to provide plaintiff with a rope or ropes to be used in ascending the roof; (4) because the defendant was negligent in failing to furnish plaintiff with a hook and ladder for the purpose of climbing to the ridge of the house.

We think the evidence is sufficient to sustain plaintiff's contentions and the findings of the jury with reference thereto. We think plaintiff correct in his contention that the injury did not result from climatic conditions alone; that they resulted from an improper command at an improper time for plaintiff to go up on the roof when it was dangerous and hazardous to do so and defendant's failure to provide plaintiff, or to use reasonable diligence to provide him, with a safe place and proper and suitable tools and facilities with which to do the work, under the circumstances. The command to go upon the roof and make the repairs under the circumstances was given at an inopportune time. (But the time alone was not the cause of the injury). The evidence shows there was no emergency. There was no situation which made it either imperative or important that the work plaintiff was commanded to then do was necessary at that time. Whether or not the matters mentioned constituted negligence, under the circumstances, was a question of fact for the jury, the court, therefore, did not err in overruling defendant's motion for an instructed verdict. Texas Ry. Co. v. Thompson, 1 S. W. (2d) 938, affirmed (Com.) 12 S. W. (2d) 963; Ft. Worth Elevator Co. v. Russell, 123 Texas 128, 70 S. W. (2d) 397; Morton Salt Co. v. Wells, 123 Texas 151, 70 S. W. (2d) 409; Commerce Milling & Grain Co. v. Gowan, 104 S. W. 916.

3 The defendant contends that even if it should be held that the evidence sustains the jury's finding of negligence, neverthe-

less plaintiff is not entitled to recover because he assumed the risks incident to his employment. We think it cannot be successfully contended, under the peculiar combination of circumstances disclosed by this record, that plaintiff was subjected only to the ordinary risks of his employment. The plea of assumed risk is not available to defendant, a Railway Company, as a bar to recovery of damages suffered by plaintiff, its employee, resulting from defendant's negligence, even though the risks were known to plaintiff. Art. 6437, R. S. 1925. Said statute does provide that defendant may, for the purpose of diminishing the amount of damages recoverable by plaintiff, plead and prove that, in view of the risks, dangers and hazards known to plaintiff, he was negligent in remaining in the employment of defendant. Defendant has not made such allegation nor proof.

Therefore, in this case, it is immaterial that plaintiff knew of the danger in attempting to scale the roof as he was directed to do, such risk resulting from the negligence of defendant.

It was said in Texas & N. O. Ry. Co. v. Tilley, (Com.), 6 S. W. (2d) 86:

"In our statute (Article 6437, R. S. 1925) it is provided:

" 'That while the employee does assume the ordinary risk incident to his employment he does not assume the risk resulting from any negligence on the part of his employer, though known to him.'

"It is further provided that, in a suit wherein 'it is alleged and proven' that the 'employee was chargeable with negligence in continuing in the service* * in view of the risk, dangers and hazards of which he knew or must necessarily have known, in the ordinary performance of his duties,' such 'fact shall not operate to defeat recovery, but the same shall be treated and considered as constituting contributory negligence,' with possible diminishment of recovery.

"The pleading does not include a charge of negligence 'in continuing in the service'; hence the part of the state statute secondly mentioned has no application."

Also, see Wichita Falls & S. Ry. Co. v. Holbrook 50 S. W. (2d) 428; Olds v. Missouri, K. & T. Ry. Co. 228 S. W.

336; Gilf, C. & S. F. Ry. Co. v. Kennedy, 139 S. W. 1009; Freeman v. Kinnerly, 151 S. W. 580.

We think the authorities relied upon by the defendant may be distinguished upon the facts, or because Interstate Commerce was involved in such cases, or because Art. 6437 was not applicable in said cases.

We have considered all of appellant's propositions. We do not think any of them manifest reversible error. The plaintiff's (appellee's) motion for rehearing is granted. The judgment of the district court is affirmed.

March 17, 1939.